THE STATE OF TENNESSEE ON RELATION OF JACK
THOMPSON, Father-in-Law and Next Friend
of Peggy Willis Thompson

*v.*

MARION COUNTY BOARD OF EDUCATION et al.

(*Nashville,* December Term, 1956.)

Opinion filed May 3, 1957.

RAULSTON RAULSTON & SWAFFORD, Jasper, for relator.

PAUL D. KELLY, JR., Jasper, for respondent.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

In November of 1955 the Marion County School Board adopted the resolution under attack here. It is first recited therein that "there has arisen a serious problem concerning the marriage of high school students in the

various high schools" of the county, and that the Board "is of the opinion that the said practice is detrimental to the progress and general well being of the operation of the schools". Then it was resolved that any student who marries during the school term shall be automatically "expelled * * * for the remainder of the current term". If the marriage takes place during vacation such student "shall not be allowed to attend any county school during the term next succeeding". This resolution was promptly made known to the students in each of the high schools.

In February of 1957 the young lady involved in this litigation married. She was eighteen years old, and was in her fourth year of attendance as a student in the high school at Jasper. She expected to graduate in May. Her scholastic attainments had been consistently high.

The Board, in accordance with the terms of the aforementioned resolution, promptly forbade her the privilege of attending school the remainder of this school year. She can re-enter the next school year.

The young lady's father-in-law sought by writ of *mandamus* to immediately have this girl restored to enrollment in the school so that she could graduate in May. The reason assigned for the relief sought is, in the language of the petition, this: "The rule is so unrelated to the interest of the school or its affairs as to amount to an abuse of discretion by the respondent Board of Education".

The Chancellor held that "the rule imposed was neither arbitrary nor unreasonable under the facts dis-

closed by this record'', and refused to intervene. Relator has appealed.

The case was heard on bill and on answer that was sworn to. It discloses that there are four high schools in Marion County. It is averred in the answer that for a period of years previous to the adoption of this resolution there had been a deterioration of the discipline and decorum in these schools ''due to student marriages'', and that the situation had become such that each of the four principals requested the Board to adopt the resolution in question. It was represented to the Board by these principals that the confusion, disorder, etc., caused by student marriages ''mostly occur immediately after the marriage and during the period of readjustment, and the influence of married students on the other students is also greatest at this time''. The answer avers that this is the reason the Board adopted the resolution forbidding attendance during the remainder of the school term immediately following the marriage.

Code Section 49-214 (9) makes it the duty of the Board ''to suspend or dismiss pupils when the progress or efficiency of the school makes it necessary''. While we have no decision in this jurisdiction on like facts, there is applicable in principle *Hayslip v. Bondurant,* 194 Tenn. 175, 250 S.W.2d 63, 64. In that case a local act vested the City of Memphis Board of Education with ''power to employ and dismiss teachers.'' Its action in dismissing the teacher there involved was attacked as illegal, because, so it was alleged, the ground assigned for dismissal was unreasonable. In sustaining the Board, this Court held that any activity of a teacher which has a reasonable bearing on his influence in the class room is

within the bounds of reasonable regulation by the Board. Likewise, any activity of students which can be said to have a reasonable bearing on his or her influence upon the students or school is within the bounds of reasonable regulation by the Board in the exercise of the statutory duty vested in it to suspend pupils "when the progress or efficiency of the school makes it necessary".

■ If the representations made to the County Board of Education by every high school principal in Marion County as to their respective observations and experiences on this subject is at all accurate, then married students, and by virtue of the psychological effect thereof, for a few months immediately following marriage, have a detrimental influence upon fellow students, hence, a detrimental effect upon the progress and efficiency of the school. Therefore, if these principals know whereof they speak, the attendance during such period of such married students in the schools is within the bounds of reasonable regulation by the Board.

■ We are accustomed to accept the testimony of experts in the various fields of human activity as to what is reasonably necessary for the welfare of the particular activity as to which this expert therein is testifying. No reason is suggested as to why this practice should not be followed when the witness is an expert in the field of operating public high schools. Certainly the principals of the high schools in question should be regarded by reason of training, experience and observation as possessing particular knowledge as to the problem which

they say is made by the marriage and uninterrupted attendance of students in their respective schools.

It is to be gathered from the statement of these teachers that some regulation is necessary. A milder one than that adopted by this resolution is not suggested. Nor does one occur to this Court. Based on this line of reasoning the conclusion must be that the regulation has a reasonable bearing on the progress and efficiency of these schools.

■ Boards of Education, rather than Courts, are charged with the important and difficult duty of operating the public schools. So, it is not a question of whether this or that individual judge or court considers a given regulation adopted by the Board as expedient. The Court's duty, regardless of its personal views, is to uphold the Board's regulation unless it is generally viewed as being arbitrary and unreasonable. Any other policy would result in confusion detrimental to the progress and efficiency of our public school system.

Relator refers to a Mississippi case of *McLeod v. State of Mississippi ex rel. Miles*, 154 Miss. 468, 122 So. 737, 63 A.L.R. 1161. Whatever else may be said of that case, it is distinguishable from the instant case by the fact that the resolution there adjudged unreasonable, hence void, expelled such marrying students permanently from the public schools.

The extreme to which a Court will go sometimes to carry out the wholesome policy of not interfering with the acts of Boards of Education, unless clearly arbitrary and unreasonable, is reflected in the case of *Pugsley v. Sellmeyer*, 158 Ark. 247, 250 S.W. 538, 30 A.L.R. 1212.

The regulation there forbade girl students from the use of cosmetics. This rule was upheld by the majority opinion of that Court, and the eighteen year old girl deprived of the privilege of attending school because she insisted upon putting face powder on her face. Maybe it should be observed that this was back in 1923.

The decree of the Chancellor will be affirmed with costs adjudged against the relator and his sureties.