Jerry KISSICK, Appellant,

v.

GARLAND INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 15697.

Court of Civil Appeals of Texas.

Dallas.

Nov. 20, 1959.

Rehearing Denied Dec. 18, 1959.

McKool & Bader, Dallas, for appellant.

Earl Luna, Dallas, for appellee.

YOUNG, Justice.

In proceedings for injunction, Jerry Kissick, individually and on behalf of his minor son, Jerry Kissick, Jr., sought to restrain enforcement of a resolution of defendant District providing that "married students or previously married students be restricted wholly to classroom work; that they be barred from participating in athletics or other exhibitions, and that they not be permitted to hold class offices or other positions of honor. Academic honors such as Valedictorian and Salutatorian are excepted". Temporary relief was denied upon hearing with this appeal.

Young Kissick is a resident of defendant District and student of Garland Public School—a letter man on its 1958 football team. He testified to having married in March 1959 at 16 years of age to a girl, age 15, continuing to hold that status at the present school and football season, but then barred from further participation in athletic activities perforce of said regulation; that he had planned to continue on the team during succeeding years of High School, looking to an athletic scholarship and college.

The resoultion was attacked as discriminatory, unreasonable and unconstitutional in that, among other things, same is given retroactive effect, applying to those students who were married prior to August 24, 1959. It is admitted that physical education is a required course of the school; the playing of football being sufficient to obtain credit

for that compulsory course; also that the resolution was passed, in the main, to discourage juvenile marriages among students; the school system not having separate facilities for accommodation of married students.

Appellee District adduced evidence in support of the resolution, summarized as follows: that the School has a Parent-Teachers' Association composed of 12 units; its President, Mrs. Mosser, testifying that the group had made an extensive study of "teen-age" marriages in the School, the resolution being in accord with their recommendations; that their study had included the ill effect of married students participating in extra-curricular activities with unmarried students; noting that there had been an alarming increase in juvenile marriages in the Garland School. Mrs. Mullins and Mrs. Mitchell of P.T.A. testified to the same effect. Mr. Raymond Fletcher, Board member, professional psychologist, and of past teaching experience, stated that a survey among parents of junior and senior high school students indicated a definite need for the resolution; a poll by way of post cards sent to them favoring the resolution by a percentage of nine to one. He said that problems existing in connection with married students participating in school activities such as overnight athletic trips, band trips, etc., was detrimental to efficiency of the system; that in the District last year (1958) there was a total of 62 married students; of these, 24 students had dropped out of school, and of the remainder, at least one-half experienced a drop of at least 10 points in grades; the study further demonstrating a conflict in the general diffusion of knowledge "as witnessed by the drop in grades and lack of opportunity to teach some of them because of their actual dropping out of school".

Points of appeal involve questions of law; in substance that the resolution in question was void (1) as arbitrary, capricious, discriminatory and unreasonable; (2) violative of public policy in that it penalizes marriage; (3) violative of the 14th Amendment, U. S. Constitution and Art. 1, Sec. 3, State Constitution, Vernon's Ann.St., because it denies equal protection of the law; (4) denies due process of law under the same Federal Amendment, also Art. 1, Sec. 19, Texas Constitution; (5) is violative of Art. 1, Sec. 16 State Constitution, because retroactive in its effect on appellant; and (6) the Court's error in failing to hold the resolution prospective in nature, and not applicable to Jerry Kissick, Jr., since he was married prior to its passage.

Generally relevant to the regulation under attack are the following constitutional and statutory references: that in Texas scholastic age is over six and under eighteen at beginning of the school year. Art. 2902, Vernon's Ann.Civ.St.; 37–B Tex. Jur. p. 404. Children over eighteen years of age and under twenty-one (also under six years) are not free school students as a matter of right, but may be admitted to benefits of public school on such terms as the trustees may deem proper and just, but not otherwise. Art. 2904, V.A.C.S.; 37 Tex.Jur. p. 404. Art. 7, Sec. 1, State Constitution provides: "a general diffusion of knowledge being essential to the preservation of the liberties and rights of the people it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

2780 V.A.C.S., states in part: "said trustees shall adopt such rules, regulations and by-laws as they may deem proper; and the public free schools of such independent district shall be under their control; and they shall have the exclusive power to manage and govern said schools * * *."

■ With regard to authority of school trustees, it is uniformly held that "the courts will not interfere in such matters unless a clear abuse of power and discretion is made to appear". 3–B Tex.Jur. pp. 414–415. We shall reserve a discussion of

appellant's first point (the resolution as arbitrary, unreasonable, etc.) until later in this opinion.

■ Appellant asserts that such resolution is violative of public policy in that it penalizes persons because of marriage. Consistent with limitations and requirements of State Statutes, both civil and criminal, the point is overruled. Art. 4603, V.A.C.S., provides that "males under sixteen and females under fourteen years of age shall not marry". Art. 404, Vernon's Ann.Penal Code, makes it a criminal offense for the County Clerk to issue a marriage license to males under twenty-one or females under eighteen without consent of parents or guardian, or in lieu thereof the County Judge, under penalty of a $1,000 fine. Art. 4605, V.A.C.S., places similar restrictions on issuance of a marriage license to males under twenty-one and females under eighteen. And in the summer of 1959 our Legislature evidenced its concern over the problem of "teen-age" marriages by amending Art. 4605. Issuance of license to marry was prohibited to such underage applicants except "upon the consent and authority *expressly given* by the parent or guardian of such underage applicant *in the presence of the authority issuing such license*", * * * (emphasis ours); also requiring that application therefor be on file in the County Clerk's office for not less than three days prior thereto.

■ As appellant states, it is indeed the policy of the law to look with favor upon marriage and to seek in all lawful ways to uphold this most important of social institutions; every intendment being in favor of matrimony. Gress v. Gress, Tex.Civ. App., 209 S.W.2d 1003. The principle however is referable to those of lawful age (male twenty-one, female eighteen). On the other hand, the legislative policy is otherwise insofar as an underage marriage is concerned; it being clearly manifest that by the cited Statutes a public policy is announced unfavorable to and in outright discouragement of "underage applicants" for matrimony.

■ In points 3 and 4 appellant cites constitutional provisions, both State and Federal, with which, he says, the regulation is in conflict. Sufficient grounds for overruling same may be found in the principles underlying the disposition of Board of Trustees. University of Mississippi v. Waugh, 105 Miss. 623, 62 So. 827, L.R.A.1915D, 588; Waugh v. Board of Trustees of University of Mississippi, 237 U.S. 589, 35 S.Ct. 720, 59 L.Ed. 1131, and Wilson v. Abilene Independent School District, Tex.Civ.App., 190 S.W.2d 406, involving, generally, the exclusion of fraternity and sorority houses. We will simply refer to the extensive discussions in these cases for conclusions adverse to the propositions here contended for. Incidentally, in Wilson's appeal, supra, the resolution adopted by Abilene School District applied to students who had belonged to fraternities prior to its adoption.

■ But appellant points out that the object prohibited in above cited cases related solely to extra-curricular activities; whereas the instant situation involves a compulsory school course (physical education)—the playing of football satisfying that requirement. Obviously, in the case of Jerry Kissick, Jr., his eligibility for the team was contingent upon physical condition and scholastic grades as determined by the governing athletic authority. And with especial reference to point 5 (retroactive law) the question here posed is of whether the playing of football, coupled with an athletic scholarship potential, is such a scholastic right as entitles one to protection of Art. 1, Sec. 16, State Constitution. "A statute cannot be said to be retroactive law prohibited by the Constitution unless it can be shown that the application of the law would take away or impair vested rights acquired under existing law". Mc-Cain v. Yost, 155 Tex. 174, 284 S.W.2d 898, 900. Manifestly, the thing here con-

tended for amounts to no such right. It must be classed as contingent or expectant in contrast to a vested right which is an *immediate fixed right* of present or future enjoyment. 9 Tex.Jur. p. 528. Apart from these considerations Jerry Kissick, Jr., had a constitutional right to attend the Garland School and take part in its functions subject to such reasonable rules and regulations as might be adopted by the School Board from time to time.

■ We now recur to the first and controlling issue of law raised by appellant; of whether the resolution was "arbitrary, capricious, discriminatory, unreasonable and void". Undoubtedly it had a direct relationship to objectives sought to be accomplished by school authorities—that of discouraging the marriage of "teen-age" students. A similar problem was faced by the School in State ex rel. Thompson v. Marion County Board of Education, Tenn., 302 S.W.2d 57, 58. There the Board had passed a resolution to the effect that any student who married during the school term should be automatically expelled "for the remainder of the current term". If the marriage took place during vacation, such student should not be allowed to attend school "during the term next succeeding". Under said order, the married student could resume attendance at any later full term. In upholding this regulation as not amounting to an abuse of discretion the Tennessee Supreme Court made the following observation, with which we agree: "Boards of Education, rather than Courts, are charged with the important and difficult duty of operating the public schools. So, it is not a question of whether this or that individual judge or court considers a given regulation adopted by the Board as expedient. The Court's duty, regardless of its personal views, is to uphold the Board's regulation unless it is generally viewed as being arbitrary and unreasonable. Any other policy would result in confusion detrimental to the progress and efficiency of our public school system".

All points of appeal upon consideration are overruled and judgment of the trial court affirmed.