**CARROLLTON–FARMERS BRANCH INDE-PENDENT SCHOOL DIS-TRICT, Appellant,**

**v.**

**Jay P. KNIGHT, as next friend of Tex Lloyd Knight and Sallye Anne Thompson Knight, Appellees.**

**No. 7837.**

Court of Civil Appeals of Texas.

Texarkana.

Aug. 1, 1967.

Rehearing Denied Aug. 29, 1967.

Earl Luna, Dallas, for appellant.

Paul E. Lokey, Dallas, Jerry Garrett, Denton, for appellees.

FANNING, Justice.

On January 13, 1967, Sallye Anne Thompson and Tex Lloyd Knight were married under a valid marriage license. Sallye Anne, a female, eighteen years of age, was under the laws of Texas authorized to marry; Tex Lloyd Knight, a male, seventeen years of age, and having the required statutory parental consent to obtain a marriage license, was also duly authorized to marry. Such marriage was in all respects a valid and lawful marriage under the laws of Texas.

At said time Sallye Anne and Tex were students at R. L. Turner High School,

which high school was under the jurisdiction of appellant school district.

On January 16, 1967, Sallye Anne and Tex were suspended from school because of their marriage on January 13, 1967, based upon certain regulations of the school board.

On January 18, 1967, the Judge of the 68th District Court issued a temporary restraining order directed to appellant school district and the President of its Board of Trustees, permitting appellees Sallye Anne Thompson Knight and Tex Lloyd Knight to attend school for *scholastic purposes only*.

On January 26, 1967, the Board of Trustees of appellant school district passed a resolution stating, among other things, to the effect that students who married would be suspended for three weeks and could re-apply for attendance at school only after the expiration of three weeks, etc. No *written* three weeks rule existed on the date of appellees' marriage. At and prior to the date of marriage of the appellees, appellant school district had a written resolution adopted in 1959, which resolution stated in substance that students who marry shall immediately terminate their present enrollment and report to the principal's office and ask for reinstatement, and after an *interval of time* necessary for re-enrollment, the student would be admitted to classwork, but could not participate in extra-curricular activities, etc.

On February 3, 1967, the trial court, after hearing the evidence adduced, entered a temporary injunction enjoining the appellant from enforcing a suspension order suspending either of said appellee students from attendance as students for scholastic purposes only at said high school. Appellant has appealed.

The principal question involved here is whether the trial court did or did not abuse its discretion in granting the temporary injunction under the record in this case. Involved here is the question of whether marriage alone is sufficient grounds to suspend appellee students from attendance at a public free school in Texas, for scholastic purposes only, wherein appellee students were unquestionably carried as lawful scholastics for which the State of Texas had furnished funds in accordance with the laws of Texas.

Appellee Sallye Anne Thompson Knight was an honor student at R. L. Turner High and hoped to earn a scholarship to attend college. The great preponderance of the evidence was to the effect that appellee Tex Lloyd Knight, at the time of the suspension, was taking six courses at R. L. Turner High School, and that during the third six weeks he was failing in American History and English; that he had been having a difficult time in school scholastically and that if he missed class lectures for a period of three weeks he would fail.

The great preponderance of the evidence adduced at the trial established that the presence and attendance at R. L. Turner High School of appellees pursuant to the trial court's restraining order did not cause turmoil, unrest and upheaval against education by fellow students. The appellees were not approached by other students regarding the subject of married life. The ability of appellees to study was not affected by marriage. The evidence also showed that the resolution suspending students from school for marriage had not been uniformly applied.

The Attorney General of Texas, on December 3, 1942, in opinion No. O–4965, held that a rule of the Board of Trustees of a school district suspending for the current year a student who marries was invalid, unreasonable and an abuse of discretion on the part of the school board, citing among other authorities McLeod et al., Trustees Moss Point Public Schools v. State ex rel. Colmer, 154 Miss. 468, 122 So. 737, 63 A.L.R. 1161. We quote from said opinion No. O–4965, in part, as follows:

"Your question is as follows:

"Is the rule of the Board of Trustees of the San Marcos Independent School Dis-

trict suspending for the current school year a student who marries reasonable and valid?

"In your letter you cite the applicable Texas statutes and also a number of cases decided by the courts of this State sustaining various rules established by school boards for the government of the school and for the discipline of the student body. The case of McLeod et al v. Trustees, et al, 122 So. 737, referred to in your letter clearly holds that a rule established by school authorities such as the rule in question is unreasonable and invalid. The opinion is by the Supreme Court of Mississippi and while it is persuasive, it is, of course, not binding in this state.

\* \* \* \* \* \*

"Since marriage is a domestic relation favored by the law, it is our opinion that a rule established by a school board suspending a student for no other reason than that the student marries would, as a matter of law, be an unreasonable one and an abuse of discretion on the part of the school board, if not against public policy.

"It is thought that the opinion of the court in the case of McLeod, supra, is sound and should control our answer to your question. Therefore, we think that your question should be, and it is answered in the negative."

The case of McLeod et al., Trustees Moss Point Public Schools v. State ex rel. Colmer, 154 Miss. 468, 122 So. 737, 63 A.L.R. 1161 (1929) involved an attempt to exclude a girl between the age of 15 and 16 from attending public school because she was married. The Supreme Court of Mississippi in its opinion holding that the girl should be admitted to school, stated in part as follows:

"The question is whether the ordinance under which she was denied admittance was valid. Section 201 of the Constitution provides as follows:

'It shall be the duty of the legislature to encourage, by all suitable means, the promotion of intellectual, scientific, moral, and agricultural improvement, by establishing a uniform system of free public schools, by taxation or otherwise, for all children between the ages of five and twenty-one years, and, as soon as practicable, to establish schools of higher grade.

'(1) The high schools established under the laws of this state are a part of the system of uniform public free schools provided for by the Constitution. They come within the definition of "schools of a higher grade".

'Section 161, c. 283, Laws of 1924 (section 8817, Hemingway's Code), the School Code, provides as follows: "Every parent, guardian or other person in the State of Mississippi having control or charge of any child or children between the ages of seven and sixteen years of age inclusive, shall be required to send such child or children to public day school or to a private denominational or parochial day school taught by a competent instructor, and such child or children shall attend school for at least eighty days (80) during each and every scholastic year; provided that the period of compulsory attendance for each school shall commence at the beginning of the school, unless otherwise ordered by a board of trustees or a municipal separate school district for the schools of that district, or by the county school board for other schools in the county coming under the provisions of this act".

'Paragraph 1 of section 126 of chapter 283 of the Laws of 1924 (Hemingway's Code 1927, § 8767) empowers school trustees "to prescribe and enforce rules, not inconsistent with law or those prescribed by the state board of education, for their own government and government of schools, and to transact their business at regular and special meetings

called for such purpose, notice of which shall be given each member." '

\* \* \* \* \* \*

"Marriage is a domestic relation highly favored by the law. When the relation is entered into with correct motives, the effect on the husband and wife is refining and elevating, rather than demoralizing. Pupils associating in school with a child occupying such a relation, it seems would be benefited instead of harmed. And, furthermore, it is commendable in married persons of school age to desire to further pursue their education and thereby become better fitted for the duties of life. And they are as much subject to the rules of the school as unmarried pupils, and punishable to the same extent for a breach of such rules."

In Board of Education of Harrodsburg, Kentucky et al. v. Bentley, 383 S.W.2d 677, 11 A.L.R.3d 990 (Ky.Civ.App.1964), a student was required to withdraw from school for a year because of marriage. The court held the regulation was invalid and stated:

"In 47 Am.Jur., Schools, § 155, it is said:

" 'However, a pupil may not be excluded from school because married, where no immorality or misconduct of the pupil is shown, nor that the welfare and discipline of the pupils of the school is injuriously affected by the presence of the married pupil.'

\* \* \* \* \* \*

"For the appellee it is pointed out that all persons meeting the residence, moral and mental qualifications are entitled to an opportunity for publicly furnished education until attaining age twenty-one. In today's economy we judicially note the increasing demand for education as a prerequisite for employment. Certainly there is no reason to suppose that the marriage of a student will diminish the need of that student for an education— indeed, just the contrary would appear the case."

One of the first Texas cases dealing with married students was the case of Kissick v. Garland Independent School District, Tex. Civ.App., 330 S.W.2d 708, wr. ref., n. r. e. (1959). This case involved the marriage of a sixteen year old boy and a fifteen year old girl. After his marriage Kissick was barred from further participation in athletic activities, but was allowed to continue his classroom work, pursuant to a regulation which provided that "married students or previously married students be restricted wholly to classroom work; that they be barred from participating in athletics or other exhibitions, and that they not be permitted to hold class offices or other positions of honor." The Dallas Court of Civil Appeals held that such regulation was reasonable in that the student was allowed to continue his classroom work. Although the court in the Kissick case did not deal directly with complete suspension from school due to marriage, it said by way of dicta:

"Apart from these considerations Jerry Kissick, Jr., had a *constitutional right* to attend the Garland School and take part in its functions subject to such reasonable rules and regulations as might be adopted by the School Board from time to time." (Emphasis added).

In Alvin Independent School District et al. v. Cooper, 404 S.W.2d 76, no writ (1966), the Houston Court of Civil Appeals, in an opinion written by Chief Justice Bell, held that the board of trustees of said school district was without authority to adopt a rule or policy that excluded a mother of a child from admission to school where she was of an age for which the State of Texas furnished school funds. This opinion reviews statutes which are also pertinent to the case at bar. We quote from said opinion in part as follows:

"The only reason appellee was being denied admission was because of a rule adopted by appellants that forbids admission of a married mother. \* \* \*

"We are of the view that appellants were without legal authority to adopt the rule or policy that excludes the mother of a child from admission to the school if she is of an age for which the State furnishes school funds. Appellee was when this suit was filed and tried and is now under 18 years of age. She was listed by appellants as a scholastic for whom funds should be available to the school district.

"It is true as appellants contend that Article 2780, Vernon's Ann.Tex.Civ.St. gives trustees broad powers to enact rules for the administration of school affairs.

"Certainly under it rules may be passed that the trustees deem necessary to maintain discipline among students, but this does not mean they may enact a rule the effect of which permanently excludes a person of scholastic age from attendance at school. We think the above statute must be construed in the light of other statutes in determining the authority of the school trustees.

"Article 2902 V.A.T.S. provides that all children over six years of age and under 18 years of age at the beginning of the scholastic year *shall be included in the scholastic census and shall be entitled to the benefit of the public school fund for that year*. It further provides that the trustees *shall admit the benefits of the public schools to any person over six and not over 21 years old at the beginning of the scholastic year, if such person or his parents or legal guardian reside within the \* \* \* district*. (Emphasis ours).

"The effect of this article of the statute is to give the benefits of the public school funds to those persons between six and 18 years of age but it goes further and defines persons who are entitled to admission as those persons within the district or whose parents or guardians are within the district, who are over six years of age and not over twenty-one. Such persons are entitled to admission as a matter of law.

"Article 2904 authorizes school districts to admit persons under six and over 21 to school and to provide the conditions for their admission. It then provides that as to such persons as are found to be incorrigible, the trustees may suspend such persons but such suspension shall not extend beyond the current term.

"The effect of those statutes when construed together is to require a school district to admit persons over six years of age and under 21 years of age provided they, their parents or guardian reside in the district. The school district is therefore without legal power to adopt the rule involved in this case.

"This holding does not mean that rules disciplining the children may not be adopted, but any such rule may not result in suspension beyond the current term.

"We do not deem Article 2892 V.A.T.S. as material to this case. It merely requires the attendance at school of children between the ages of 7 and 17 years for at least 165 days per year. We have no case involving this statute. We have a case where a scholastic who is entitled to attend wants to do so but is prevented from doing so by a rule the school district had no legal authority to pass.

"The trial court correctly overruled the plea to the jurisdiction and correctly issued its writ."

The latest Texas case dealing with aspects of the question here involved is Anderson v. Canyon Independent School District, by the Amarillo Court of Civil Appeals, Tex.Civ.App., 412 S.W.2d 387, no writ (1967), majority opinion by Chief Justice Denton, with Justice Northcutt dissenting. The majority opinion held that the school board was without authority to adopt a rule that students who marry during the school term must withdraw from school for the remainder of the school year and that the board could not deny admission to the student because of the fact that she was mar-

ried. We quote from the majority opinion by Chief Justice Denton, in part as follows:

"The facts are substantially undisputed. Judy Rae Anderson is sixteen years of age. She withdrew from the ninth grade of an Amarillo Junior High School on December 21, 1966 and on December 28, following, she married James Anderson. They established their residence in Canyon, Texas, on January 1, 1967. She applied for admission in the Canyon Junior High School in early January and was denied admission by the school authorities. She was denied admission solely because of a rule previously established by appellees which read: 'Students who marry during the school term must withdraw from school for the remainder of the school year.' Appellees concede she is qualified in all other respects to be admitted as a student.

"Unquestionably, Article 2780, Vernon's Ann.Tex.Civ.St. gives the school trustees broad powers to govern and manage the affairs of the schools under its jurisdiction. Generally the courts will not interfere with rules and regulations promulgated by school authorities unless such rules and regulations reveal a clear abuse of powers and discretion. McLean Independent School District v. Andrews (Tex.Civ.App.) 333 S.W.2d 886. The provisions of this statute must be considered in the light of other statutes to determine the authority of the trustees to enact a particular rule or regulation. Article 2902, V.A.T.S. provides: * * * Those so entitled to admission are persons between six and eighteen years of age if such person or his parents or guardian reside within the school district. In interpreting this article, the Houston Court of Civil Appeals held: 'Such persons are entitled to admission as a matter of law'. Alvin Independent School District v. Cooper (Tex.Civ.App.), 404 S.W.2d 76. Article 2892, V.A.T.S. requires the compulsory school attendance of 'every child' who has reached the age of seven and not more than 17 years of age. It is undisputed the appellant does not come within the exception of this act, namely a high school graduate.

"Article 2904, V.A.T.S., in addition to giving school trustees power to admit students over and under the scholastic age, under terms they deem proper and just, also provides: 'They (trustees) may suspend from the privileges of schools any pupil found guilty of incorrigible conduct, but such suspension shall not extend beyond the current term of the school.' There is no suggestion here that appellant's background, conduct or behavior was in any way questioned. As far as this record shows, she has never been enrolled in a school in the Canyon School District. She simply was denied admission because of the fact she was married.

"Appellee School District relies principally upon State ex rel. Thompson v. Marion County Board of Education [202 Tenn. 29], 302 S.W.2d 57. (Sup.Crt. of Tennessee). There the school board adopted a rule which provided that if any student married during a school term he or she would be automatically 'expelled * * * for the remainder of the current term'. If the marriage took place during vacation such student would not be 'allowed to attend any county school during the term next succeeding'. The court upheld the school board's action in suspending the eighteen year old married student. The only statutory basis cited in support of its decision was an article which made it the duty of the board 'to suspend or dismiss pupils when the progress or efficiency of the school makes it necessary'. Except for the citing with approval of some of the language in the *Thompson* case in Kissick v. Garland Independent School District (Tex.Civ.App.) 330 S.W.2d 708 (Ref. N.R.E.), we have been cited no other case which has followed the Tennessee case above cited. The *Kissick* case is not in point. It involved the construction of a rule preventing married students from

participating in certain extra-curricular school activities. It did not involve board action which made marriage, ipso facto, the basis for denial of a student's right to obtain an education. In fact, the decision recognized the married student 'had a constitutional right to attend the Garland School and take part in its functions subject to such reasonable rules and regulations as might be adopted by the School Board from time to time'.

"We think the decisions pronounced in Board of Education of Herrodsburg v. Bentley, 383 S.W.2d 677 [,11 A.L.R.3d 990] (Court of Appeals of Kentucky) and Alvin Independent School District v. Cooper (Tex.Civ.App.) 404 S.W.2d 76, are controlling. In the *Bentley* case the rule promulgated by the School District read: 'Any student, either boy or girl, who marries, automatically must withdraw immediately from School and cannot re-enter school for one full year, and then only as a special student with permission of the principal. A special student cannot attend home room or study halls or enter into any class activities, social events or athletics. If, upon re-entering school after the year has elapsed, the student becomes pregnant, she will automatically withdraw until after the birth of the child'. There the High School student was required to withdraw from school when she married during the school term. She was later denied re-admission. The trial court granted a temporary injunction requiring the school board to admit her as a student. In affirming the trial court the court reviewed the pertinent statutes and held: 'It is our conclusion that the decision of the trial court is correct; the instant regulation is arbitrary and unreasonable, and therefore void. The fatal vise of the regulation lies in its sweeping, advance determination that every married student, regardless of the circumstances, must lose at least a year's schooling'. The court concluded: 'The Board's discretion is foreclosed in advance, no matter what the facts. Such

prejudgment is unreasonable and arbitrary'.

"In Alvin Independent School District v. Cooper (supra), the rule under consideration read: 'A pupil who marries can no longer be considered a youth. By the very act of getting married, he or she becomes an adult and assumes the responsibility of adulthood. As a married student he or she shall not serve as an officer of the student body or any class or school organization. A married pupil shall not represent the school in an interschool contest or activity and shall not participate in school activities other than regular classes. If a married pupil wants to start her family, she must withdraw from public school. Such a pupil will, however, be encouraged to continue her education in the local adult education program and correspondence courses'. In affirming the trial court which required the School District to admit the student, the Houston Court of Civil Appeals reviewed the relative statutes which we have referred to above and held: 'We are of the view that appellants were without legal authority to adopt the rule or policy that excludes the mother of a child from admission to the school if she is of an age for which the State furnishes school funds. Appellee was when this suit was filed and tried and is now under 18 years of age.' The court concluded the school board had no legal authority to pass and enforce the rule and that the effect of Article 2902 was to entitle persons, otherwise qualified under the statutes, the right to admission as a matter of law.

"The school board in the instant case contends the *Cooper* case is distinguishable in that the rule in that case had the effect of permanently excluding a person coming under such rule from admission in school, while the rule here merely excludes a student temporarily. *This is simply a matter of degree and we do not interpret the Cooper case to base its decision on the basis of permanence.* The court held the school board had no legal authority to

pass the rule for the reason otherwise qualified persons were 'entitled to admission as a matter of law'. *If a student is entitled to admission, the question of the length of exclusion is not material.* (Emphasis added).

"A so-called temporary exclusion was passed by the school board in Board of Education of Harrodsburg v. Bentley (supra). As shown above, both the trial court and appellate court denied enforcement of that regulation. It is to be noted the court in the *Bentley* case also refused to follow State ex rel. Thompson v. Marion County Board of Education (supra) after citing cases from some six states. The court observed: 'It may be observed the Tennessee decision just cited is the only one which may be said to lend support to the position of the Board here'.

"When the applicable statutes are considered together, their clear intent is to require a school board to admit persons six years of age and under twenty-one years of age, provided they, their parents or guardian reside in the district. The rule adopted by the school board here is in violation of these statutory requirements. Whatever our personal views may be, we conclude the Board was without legal authority to adopt and enforce the rule in question. *The rule had the sweeping effect of denying every married student, regardless of the facts or circumstances, at least a portion of a year's education.* The rule takes effect immediately upon marriage. The student then 'must withdraw from school for the remainder of the school year', without regard to when the marriage took place. We conclude the rule is not in conformity with applicable statutes and is unreasonable and arbitrary. (Emphasis added).

"The judgment of the trial court is reversed and judgment is here rendered that the defendants below be enjoined from enforcing the rule under consideration as it applies to Judy Rae Anderson; and that the defendants admit the said Judy Rae Anderson as a student in the Junior High School of that district."

The case of Ferrell et al. v. Dallas Independent School District et al., 261 F.Supp. 545 (1967), cited by appellant, is not in point here as that case involved whether or not students who were longhaired musicians had the right to wear long hair to school in violation of a regulation involving neatness of hair.

The case of State ex rel. Thompson v. Marion County Board of Education, 202 Tenn. 29, 302 S.W.2d 57 (1957) relied on by appellant, is not in accord with the weight of authority in the United States as pointed out in *Anderson*, supra, and was not followed in *Anderson*.

In the case at bar, appellees were lawfully enrolled scholastics in R. L. Turner High School in appellant school district and possessed all the statutory requirements to attend said school as scholastics. Their marriage was in all respects a legal marriage under the laws of Texas and such marriage being in all respects proper, legal and in compliance with the statutes of Texas could not be considered in any way to be against the public policy of the State of Texas. The girl was 18 years of age and was of lawful age to marry; the boy was 17 years of age, and had the required statutory parental consent to marry and secure a valid marriage license.

There was no evidence that either of appellees were guilty of any "incorrigible" or improper conduct in any manner. They were suspended from school merely because they married while being students at said school.

■ We think the weight of authority in Texas and in the United States is to the effect that marriage alone is not a proper ground for a school district to suspend a student from attending school for scholastic purposes only.

■ We hold that the trial court did not abuse its discretion in granting the tempo-

rary injunction against the appellant under the record in this cause. All of appellant's points have been considered and are overruled.

The judgment of the trial court is affirmed.

## DISQUALIFICATION

DAVIS, Justice.

The writer honestly feels that he should disqualify himself from the decision in the above and foregoing case for the following reasons:

I was one of seven children of tenant farmers. My Mother passed away when I was only nine years of age. It was always her ambition, and it became mine, to get an education and become a lawyer. I finished Glenwood, unaffiliated, High School when I was 18 years old. I tried to enter college, but, met with two most embarrassing situations, and could not do so. I worked as a common laborer. Finally, I decided to get married, accumulate enough wealth to attend college, get a law degree and pursue my profession. I married on October 26, 1929. The Crash of 1929 was really felt in 1930. I was a tenant farmer and, although I was plagued with my difficulties, I managed to hold my own.

When I decided it was impossible for me to attend college, I decided to get my law degree by home study. I traded two "frying size chickens and a mess of turnip greens" for my first lawbook.

The only law that I know is what I have read from the lawbooks at home (many nights I have studied all night without any sleep), and have gained from experience. In 1934, I notified the Board of Legal Examiners that I was ready to take the examination for a license. In return, I was notified that I would have to furnish an "AFFILIATED HIGH SCHOOL DIPLOMA", file an application, and then wait 27 months before I would be permitted to take the Bar Exams. No one can imagine the depressed feeling that was brought upon me. I was married, then the father of two children, and was too poor to think about going to school. After much serious consideration, and a talk with Superintendent Henry McClelland and Principal John W. Avery of the Gilmer Affiliated High School, I decided to make the race for Justice of the Peace.

While serving as Justice of the Peace, I would get an affiliated high school diploma. To my surprise, they told me that I could attend the school without any payment of tuition whatever, if I had the ambition and the "Guts" to do it. I made the race and was elected. I entered Gilmer High School in the fall of 1935 and received my AFFILIATED HIGH SCHOOL DIPLOMA on June 1, 1936, at which time I was 27 years old, the father of three children and had another one on the way. I did not receive my license to practice law until April 29, 1940, at which time I was 31 years old.

I have always been taught that the best education that you can get, the better off you will be. To me, there is nothing immoral, wrong, or degrading about a legal and moral marriage. Of course, no one approves of the marriage of teen-agers, unless there is a good reason. My wife and I were teen-agers when we married. The school trustees of the Gilmer Affiliated Independent School District were so proud of the fact that I was attending the school because of my ambition that they did not charge any tuition. I was permitted the same privileges that were permitted all other school children. In the beginning, it was an awful experience. To me, any Board of Trustees who would do anything to punish or delay anyone that does not do anything that is morally wrong is not thinking in the terms of the Gospel.

As a result of my being permitted to attend High School, after I was married, I have served one term in the Texas Legislature, and I am now serving my third term on the Court of Civil Appeals. Although, I am not a perfect man, I am quite proud of

the experience that I have had, and am still married to a wonderful woman and we have four children of whom we are justly proud.

Where would I be today if I had not been permitted to attend a high school because of my marriage? For this reason, I disqualify myself.